Christopher T. HUCKO, Plaintiff,

v.

CITY OF OAK FOREST, Officer Belcher, Officer Morrissy and Officers Doe 1 through 5, Defendants.

No. 96 C 8500.

United States District Court, N.D. Illinois, Eastern Division.

March 15, 1999.

Bernard J. Nussbaum, Tracy Tatnall Segal, Sonnenschein, Nath & Rosenthal, Chicago, IL, for plaintiff.

Christopher T. Hucko, Elgin, IL, pro se.

Robert K. Bush, Michael W. Tootooian, Brian P. Mack, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SCHENKIER, United States Magistrate Judge.

In *Jaffee v. Redmond*, 518 U.S. 1, 14, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." While recognizing the existence of the privilege, the Supreme Court also observed that "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id.* at 15 n. 14, 116 S.Ct. 1923. The Supreme Court declined to elaborate on the "full contours" of the privilege or what would constitute its waiver. *Id.* at 18, 116 S.Ct. 1923. The motion presently before this Court raises just such a question, as it concerns the scope of the "implied waiver"

doctrine in the context of the psychotherapist-patient privilege.[1]

In this action, which was filed on December 26, 1996, plaintiff asserts the defendant officers used excessive force during an arrest made on January 26, 1994. It is conceded that the alleged misconduct took place in connection with plaintiff's arrest on the charge of a home invasion that had occurred earlier that day, a charge for which plaintiff ultimately stood trial and was found not guilty by reason of insanity in (First Am. Compl. ¶ 11). There is no dispute that as a result of that Judicial finding, plaintiff has been confined in mental health institutions since May 1995.

Plaintiff asserts a federal claim under 42 U.S.C. § 1983 as well as pendent state law claims for assault and battery for the alleged misconduct during his arrest. Of particular relevance to this motion are two allegations in the Second Amended Complaint. *First,* plaintiff asserts as part of his damages in this case that he "experienced humiliation, emotional distress, [and] pain and suffering" from the alleged misconduct by the defendants (Second Am. Cmpl. ¶ 17). *Second,* in order to explain why he failed to file this action within the two-year statute of limitations period, plaintiff asserts, *inter alia,* that while confined in Elgin Mental Health Center between May 18, 1995 until November 13, 1997, "plaintiff was at times preoccupied with his treatment or the effects of various medicines used to treat him" (*Id.,* ¶ 20).

Defendants moved to compel production of plaintiff's mental health and psychiatric record for an in *camera* review. The District Court ordered plaintiff to produce those documents *in camera,* and further to produce the documents to defendants' counsel under an "attorney's eyes" only provision so that the parties could narrow the dispute as to which documents are in issue. Plaintiff has complied with that order and, as a result, the scope of the documents at issue have been narrowed to those set forth in a letter from defendants' counsel to plaintiffs' counsel dated January 18, 1999 (attached as Exhibit A to Defendants' Response to Plaintiff's Motion for a Protective Order). In addition, plaintiff has filed a motion for protective order to bar production of that narrowed group of mental health and psychiatric records (doc. # 41). By a referral order dated February 12, 1999, the plaintiff's motion is before this Court for decision.

After reviewing the briefs submitted by the parties, reviewing the documents at issue *in camera,* and discussing the motion with the parties during a status conference in open court on March 9, 1999, the Court grants in part and denies in part plaintiff's motion for protective order. In particular, the Court finds that (1) plaintiff has not impliedly waived the psychotherapist-privilege merely by seeking damages for emotional harm resulting from the defendants' alleged misconduct during his arrest, but that (2) plaintiff will impliedly waive the privilege as to certain documents if he continues to maintain that a reason for his delay in filing suit was his "preoccupation" with his treatment or the effects of various medications. The Court addresses each of those findings in turn.

## I.

■ Defendants offer no serious argument that the documents they seek are non-privileged.[2] Moreover, plaintiff does not seek to offer any treating psychotherapist or independent expert testimony to advance his claim of emotional harm. Nonetheless, defendants assert that plaintiff's claim for dam-

---

1. In *Jaffee,* the Supreme Court held that this privilege extended not only to confidential communications with licensed psychiatrists and psychologists, but also to "licensed social workers in the course of psychotherapy." *Id.* at 15–16, 116 S.Ct. 1923. Thus, we use the shorthand "psychotherapist" to embrace licensed psychiatrists, psychologists and social workers.

2. Defendants suggest that records involved in determining plaintiff's fitness to stand trial "were available to the public in the Criminal Court file" (Def.'s Response to Plaintiff's Motion for a Protective Order ("Def.'s Resp.") 7), which if true would render those documents non-privileged. However, plaintiff denies those materials are in the court file (Pl.'s Reply, 3 n. 3), and defendants have not offered proof to back up their assertion (if defendants were correct, we would expect to have seen attached to their papers samples of the documents they claim are open for public view).

ages based on emotional distress and humiliation place all aspects of his mental condition at issue and, without more, constitutes an implied waiver of privileged communications between plaintiff and mental health professionals.

In wake of *Jaffee*, neither the Seventh Circuit nor the courts in this district appear to have addressed the precise question presented here: that is, whether a plaintiff who seeks damages for emotional distress impliedly waives the psychotherapist-patient privilege, even if the plaintiff does not seek to offer medical testimony at trial. The district courts that have addressed this question are split, with *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass.1997), holding that the mere assertion of such a damages claim does not constitute a waiver, while several other courts have found implied waiver in these circumstances. *E.g., Fox v. The Gates Corporation*, 179 F.R.D. 303 (D.Col.1998); *Vasconcellos v. Cybex International, Inc.*, 962 F.Supp. 701 (D.Md.1997); *see also Sarko v. Penn–Del Directory Company*, 170 F.R.D. 127 (E.D.Pa.1997) (waiver found in connection with plaintiff's claim that she suffered a disability within the meaning of the Americans with Disabilities Act ("ADA")).[3]

In analyzing the question of waiver, all of those decisions begin with a common premise: that it is appropriate to consider the question of implied waiver of the psychotherapist-patient privilege by analogizing to these circumstances which give rise to an implied waiver of the attorney-client privilege. This approach finds support in *Jaffee*. In recognizing the psychotherapist-patient privilege, the Supreme Court in *Jaffee* explained that, as does the attorney-client privilege, a psychotherapist-patient privilege serves important private and public interests. Like the attorney-client privilege, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." *Jaffee*, 518 U.S. at 10, 116 S.Ct. 1923 (quoting *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Just as confidentiality and trust are necessary in order for there to be open and effective communications between an attorney and a client, the Court reasoned that "[e]ffective psychotherapy, ..., depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears," which the Court believed would be compromised by even "the mere possibility of disclosure." *Id.*

The Supreme Court also found that the psychotherapist-patient privilege, as does the attorney-client privilege, promotes a broader public end: "facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 11, 116 S.Ct. 1923. In light of the Supreme Court's view that the psychotherapist-patient privilege serves private and public interests similar to those advanced by the attorney-client

---

**3.** A number of other district courts have held that allegations of emotional pain and suffering can impliedly waive the psychotherapist-patient privilege, but in factual contexts where—unlike in this case—the plaintiff sought to offer evidence from psychotherapists to bolster that claim. *See Sidor v. Reno*, 1998 WL 164823, *1 n. 1 (S.D.N.Y.1998) (plaintiff sought to bar disclosure of treatment records and a deposition of her treating physician, while at the same time she sought to offer retained expert testimony concerning her mental state during the relevant time period); *McKenna v. Cruz*, 1998 WL 809533, *1 (S.D.N.Y.1998) (plaintiff sought protective order precluding discovery of records of his psychotherapists, while at the same time the plaintiff testified about the diagnosis he received from the psychotherapist); *EEOC v. Danka Industries, Inc.*, 990 F.Supp. 1138, 1142 (E.D.Mo.1997) ("[p]laintiffs cannot rely on advice given by certain psychotherapists to support their claims while at the same time expect to keep confidential advice given by other psychotherapists that may weaken their claims"); *Doolittle v. Ruffo*, 1997 WL 151799, *3 (N.D.N.Y. 1997) (plaintiff sought to preclude production of records by certain of her health care providers, at that same time that she identified one of those individuals as an expert witness at trial); *Vann v. Lone Star Steakhouse & Saloon*, 967 F.Supp. 346, 348 (C.D.Ill.1997) (plaintiff sought to bar disclosure of records from a psychotherapist whom plaintiff disclosed as an expert witness at trial). These cases all involve situations where plaintiffs sought to use the privilege as a shield, while at the same time they sought to use testimony by psychotherapists as a sword. That is not an issue in this case, and those cases therefore provide limited guidance in the different situation presented here.

privilege, this Court agrees that the principles governing implied waiver of the attorney-client privilege should apply in determining what is sufficient to constitute an implied waiver of the psychotherapist-patient privilege.

The Seventh Circuit has recognized that "the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir.1995). In so stating, the Seventh Circuit cited with approval *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir.1994), which considered in detail the scope of the implied waiver doctrine.

In *Rhone–Poulenc*, the Third Circuit listed examples of situations in which a party waives the attorney-client privilege: such as, filing a malpractice action against a lawyer, or asserting specific advice from an attorney as an affirmative defense to a claim. 32 F.3d at 863. The Third Circuit found that in such circumstances, the common thread leading to waiver is that "the client has made the decision and taken the affirmative step in the litigation to *place the advice of the attorney in issue*" 32 F.3d at 863 (emphasis added).

Significantly, the *Rhone–Poulenc* court criticized decisions that have "extended the finding of waiver of the privilege to cases in which the client's state of mind may be an issue in the litigation" on the theory that this is appropriate to "test the client's contentions." 32 F.3d at 864. The Court explained that such an analysis is of "dubious validity," because "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go the heart of an issue." *Id.* Thus, the *Rhone–Poulenc* court emphasized that what is necessary for a waiver of the attorney-client privilege is not merely for the client's *state of mind* to be in issue, but rather for the *attorney's advice* to be in issue:

Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, *and attempts to prove that claim or defense by disclosing or describing an attorney client communication.*

32 F.3d at 863 (emphasis added).

The Court believes that application of the principles set forth in *Rhone–Poulenc* reveals that the plaintiff in this case has not waived the psychotherapist-patient privilege merely by asserting that the defendants' alleged misconduct caused him to suffer emotional harm. This is not a case—like those cited in note 3, *supra*—in which the plaintiff seeks to offer testimony of medical experts, which under the reasoning of *Rhone–Poulenc* would present a clear case of implied waiver. Nor is this a situation where plaintiff's testimony about his alleged emotional harm resulting from defendants' conduct necessarily will reveal or rely upon medical expert testimony; that is, plaintiff can testify about the alleged effect of defendants' conduct without the aid of expert testimony.[4] By contrast, plaintiff here has not offered, or indicated any intent to offer, evidence of his prior consultations with psychotherapists in order to prove his claim of emotional harm; indeed, he does not dispute that those consultations are separate and apart from, and have nothing to do with, the emotional harm he claims to have suffered as a result of the defendants' alleged conduct. Nor has plaintiff indicated any intent to offer independent expert testimony to establish his claim of emotional harm, or to recite what he has been told by his doctors. To adapt the language of the *Rhone–Poulenc* analysis to this setting, plaintiff has not waived the privilege in the communications that the defendants seeks to obtain because he has not "taken the affirmative step in the litigation to place [that diagnosis or treatment]" in issue.

---

**4.** This distinguishes the present case from the situation on *Sarko,* where plaintiff's attempt to establish an ADA claim required proof of "dis-

abled status," which in turn necessarily would require plaintiff to offer expert testimony or at least to reveal what medical experts told her.

In reaching this conclusion, the Court is mindful that although most of the decisions that have found waiver are distinguishable on their facts, the analysis they employ—if applied literally—would suggest that implied waiver should be found here as well. *E.g., Vasconcellos,* 962 F.Supp. at 708 (by asserting a claim of emotional distress, plaintiff "has placed her mental condition at issue"); *Sarko,* 170 F.R.D. at 130 (by filing an ADA claim in alleging that she had the disability of clinical depression, plaintiff "has placed her mental condition directly at issue in this case"). With respect, the Court believes that these decisions paint with too broad a brush in determining waiver. If applied in the attorney-client context from which it is drawn, the waiver analysis employed by those cases would treat the mere assertion of an affirmative defense that denies willful infringement as a waiver of the privilege. However, defendant who denies willful infringement, and asserts as an affirmative defense that he acted in good faith, does not automatically waive the privilege as to any communications he may have had with counsel concerning the alleged infringement. It is only when the defendant, as part of the defense, specifically asserts the advice of counsel as a basis of that good faith defense that the privilege is waived. *Rhone–Poulenc,* 32 F.3d at 863. The Court believes that this underscores that the waiver analysis applied in *Vasconcellos* and *Sarko* is not adequately grounded in the principles that should govern application of implied waiver.

Cases that have recognized a broader doctrine of implied waiver also have considered other factors, which the Court does not consider persuasive. *First,* some decisions suggest that implied waiver should be found because it is not fair to allow the plaintiff "to hide ... behind a claim of privilege when that condition is placed directly at issue ..." *Sarko,* 170 F.R.D. at 131. In substance, this is an argument that a plaintiff should not be allowed to use the privilege to prevent disclosure of relevant information, a proposition that defendants urge (Def.'s Resp. at 6–7) but that *Rhone–Poulenc* squarely rejected. 32 F.3d at 864. And with good reason—the very nature of a privilege is that it prevents disclosure of information that may be relevant in the case, in order to serve interests that are of over-arching importance. Moreover, analyzing the "fairness" of whether to permit a claim of privilege or instead to deem it waived would promote uncertainty in the scope of the privilege, which is precisely what the Supreme Court sought to avoid by holding that the application of the psychotherapist-patient privilege would not be "contingent upon a trial judge's later evaluation of the relative importance of the patient's interest and privacy and evidentiary need for disclosure." *Jaffee,* 518 U.S. at 17, 116 S.Ct. 1923. The Supreme Court found that allowing such a balancing test to be done in determining the existence *vel non* of the privilege would "eviscerate the effectiveness" of the privilege. *Id.* This Court believes that the same would be true if that same kind of balancing analysis were applied to determining the question of implied waiver.

*Second,* in finding a waiver, some courts also have relied on Supreme Court Standard 504, the model rule concerning psychotherapist-patient privilege that was proposed by the Judicial Conference Advisory Committee on Rule of Evidence and the Supreme Court but was not enacted by Congress. *E.g., Doolittle,* 1997 WL 151799, *2. Supreme Court Standard 504(d)(3) would have created an exception to the psychotherapist-patient privilege for "communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense." The Court does not find Supreme Court Standard 504 persuasive here. In declining to adopt the proposed rules of evidence which included Supreme Court Standard 504, Congress expressed the view that the law of privilege was still evolving and did not want codification to stifle that evolution. *See, e.g., Trammel,* 445 U.S. at 47, 100 S.Ct. 906. Moreover, the Supreme Court in *Jaffee* did not rely on that unadopted rule in recognizing the privilege or establishing any of its parameters but, to the contrary, recognized a privilege that exceeded the scope of the privilege that Supreme Court Standard 504 would have endorsed (by extending it to embrace communications with

licensed social worker). 518 U.S. at 16 n. 16, 116 S.Ct. 1923.

*Third,* some courts have observed that even if plaintiff does not seek to offer psychiatric testimony, the plaintiff will attempt to establish his or her emotional distress claim through their own testimony—as plaintiff here apparently plans to do. Thus, some courts have reasoned that defense counsel "has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related." *Sidor,* 1998 WL 164823, *2 (quoting *Lanning v. Southeastern Pennsylvania Transportation Authority,* 1997 WL 597905 (E.D.Pa.1997)). This argument, however, is a variation on the theme that *Rhone–Poulenc* expressly rejected: that the mere relevance, or even importance, of certain information to a plaintiff's claim is insufficient to strip the plaintiff of the privilege in that information.

The Court recognizes that, at first blush, it may appear anomalous that a plaintiff who seeks damages for emotional pain and suffering may be privileged from producing medical records that may shed light on that claim. However, that is no more anomalous than allowing a defendant in a patent case to deny willful infringement and at the same maintain the privilege in an opinion letter of counsel that might shed light on that claim. In both instances, that is the price that we pay for recognizing a privilege, a price that the law deems necessary in order to obtain the supervening private and public benefits that inure from recognition of the privilege. In short, plaintiff who alleges emotional pain and suffering damages certainly puts his mental state at issue; but by doing so, he *does not ipso facto* give up the privilege in confidential communications with psychotherapists concerning his mental state. As *Rhone–Poulenc* teaches, more has to be done for there to be a waiver. And in this case, more has not been done.

The Court's ruling does not mean that the defendants will be unable to offer any evidence to contradict plaintiff's assertion that he has suffered emotional damage from conduct of defendants on January 26, 1994. It is of public record that the defendant was charged with a criminal offense as a result of the events immediately preceding his arrest on January 26, and that he was subsequently found not guilty by reason of insanity. Presumably, defendants can obtain from public court records any testimony at the trial concerning the mental condition that the defendant argued justified a finding of not guilty by reason of insanity. Plaintiff does not argue that the condition leading to the not guilty by reason of insanity verdict was caused by any of the police officers' conduct—nor could plaintiff do so, as his contact with the defendants did not occur until *after* the time at which he possessed the condition that led to the finding of not guilty by reason of insanity. The defendants presumably will be free to argue at trial that any emotional distress that the plaintiff experiences (or experienced) is the result of that preexisting condition, and not their actions.

Moreover, the fact of plaintiff's consultations with psychotherapists either before or after his arrest, and the dates of those consultations, is not privileged. It may be that a jury would infer that if the substance of those consultations were helpful to plaintiff, he would have revealed it. Indeed, it may be that the plaintiff—without the benefit of medical testimony—will be compromised in his efforts to persuade the jury that he has emotional distress that was caused by the defendants, and that is not instead the product of his preexisting condition. However, that will be for the jury to decide at a later time. All that the Court's ruling today finds is that as matters now stand, plaintiff has not waived his psychotherapist-patient privilege merely by asserting a claim for damages for emotional distress.

## II.

█ We now turn to defendants' claim that plaintiff has waived his psychotherapist-patient privilege by asserting in the second sentence of Paragraph 20 of the Second Amended Complaint, as a basis for avoiding the two-year statute of limitations, that his delay in filing the complaint was occasioned at least in part by his preoccupation with his treatment or the effects of various medicines used to treat him. The Court applies the

same waiver principles discussed above, but comes to a different result.

Unlike plaintiff's claim for emotional distress damages, for which he has not put at issue the consultations he has had or treatments he has received by mental health professionals, plaintiff's assertion that he was preoccupied with his treatment or the effects of various medicines used to treat him squarely puts at issue what treatment he received, what medicines were used to treat him, and what effects those medicines had on him. For plaintiff to testify about these matters is to inescapably disclose some of what he was told by his treaters, even if none of them testifies. To use the language of *Rhone–Poulenc*, by this allegation, plaintiff is "assert[ing] a claim or defense [that is, a defense to the application of the statute of limitations], and [is] attempt[ing] to prove that claim or defense by disclosing or describing [confidential communications with mental health professionals]," *Rhone–Poulenc*, 32 F.3d at 863—that is, what treatments he received, what medications he had, and what effects those medications had.

By so doing, plaintiff has impliedly waived the privilege in certain of his mental health records, with the following limitations. *First*, it is undisputed that plaintiff alleges that his preoccupation with the treatment and the effects of medication occurred while he was at the Elgin Mental Health Center between May 18, 1995 and November 13, 1997 (Second Am. Compl. ¶ 20). However, plaintiff filed his complaint on December 26, 1996 (see Defendants' Response to Plaintiff's Motion for a Protective Order, 4). Thus, any waiver would be limited to records while plaintiff was at Elgin between May 18, 1995 and December 26, 1996.

*Second*, the waiver pertains only to those portions of the report that would reveal the treatment received by plaintiff, the medications he was given, and the effects of those medications. Other privileged information from those records would be redacted.

During the hearing on March 9, 1999, counsel for plaintiff indicated that in the event the Court found an implied waiver based on the assertion in the second sentence of Paragraph 20 of the Second Amended Complaint, plaintiff would seek leave to withdraw those assertions. Accordingly, the Court's Order will allow plaintiff 14 days in which indicate whether he plans to withdraw the allegation in the second sentence of paragraph 20 of the Second Amended Complaint. If within that time plaintiff seeks leave to file an amended complaint withdrawing that allegation, then the privilege in the foregoing documents will not be waived and defendants will be required to return all copies. In the event that within 14 days plaintiff does not seek leave to file an amended complaint withdrawing that allegation, then the privilege will be deemed waived as to the foregoing documents, the Court will indicate what redactions may be made, and defendants may then use the redacted documents for discovery and, if admissible, at trial.

WHEREFORE, for the foregoing reasons, plaintiff's motion for protective order (doc. # 41) is granted in part and denied in part. Within seven days, defendants shall return to plaintiff all copies of the privileged documents, and shall represent in a cover letter to plaintiff that they retain no copies. If within 14 days from the date of this opinion plaintiff seeks leave to file an amended complaint that withdraws the allegation in the second sentence of paragraph 20 of the Second Amended Complaint, then there will be deemed no waiver of the privilege as to documents Bates Nos. 549, 720, 900–04, 952–55, 968–72, 1865–66, and 1867–70. In the event that plaintiff does not seek leave to file an amended complaint within the next 14 days withdrawing the allegation in the second sentence of paragraph 20 of the complaint, the psychotherapist-patient privilege will be deemed partially waived as to documents Bates Nos. 549, 720, 900–04, 952–55, 968–72, 1865–66, and 1867–70, subject to the redactions that the Court will permit. The matter is set for status in open court on March 30, 1999 at 10:00 a.m.