**Celeste L. STEVENSON, Plaintiff,**

v.

**STANLEY BOSTITCH, INC., Defendant.**

**No. 1:98–CV–2824–BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 21, 2001.

Paula Rafferty Miller, Office of Paula Rafferty Miller, Atlanta, GA, Craig Mitchell Frankel, Frankel & Associates, Atlanta, GA, for plaintiff.

Stephen Xavier Munger, Emily S. Blumenthal, Jackson, Lewis, Schnitzler & Krupman, Atlanta, GA, for defendant.

### ORDER

SCOFIELD, United States Magistrate Judge.

This matter is before the Court on Defendant's motion to compel discovery and for an order requiring the plaintiff to submit to a mental examination pursuant to Rule 35(a) of the Federal Rules of Civil Procedure [Doc. No. 49], and Plaintiff's corresponding motion to quash and for protective order [Doc. No. 40]. The contentions in these motions were discussed at the hearing held on September 5, 2000, at which time the Court took the matters under advisement and directed the parties to file additional briefs. *See* [Doc. No. 60]. The additional briefs have been filed and the matters are ripe for decision.

## I.

### *Motion for Rule 35(a) Mental Examination*

▉ Rule 35(a) of the Federal Rules of Civil Procedure provides:

When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician ... The order may be made only on a motion for good cause shown ...

Fed.R.Civ.P. 35(a). The key predicates for the application of this rule are whether the plaintiff has put her mental condition "in controversy" and whether defendant has shown "good cause" for the examination. *Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525, 527 (M.D.Fla.1988) (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)); *see also Schlagenhauf,* 379 U.S. at 121; *Bridges v. Eastman Kodak Co.,* 850 F.Supp. 216, 221 (S.D.N.Y.1994). These requirements are not met by " 'mere relevance to the case ... but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.' " *Robinson,* 118 F.R.D. at 527 (quoting *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234).

The majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or "garden variety" emotional distress. *See Ricks v. Abbott Labs.,* 198 F.R.D. 647, 648–50 (D.Md.2001) (denying exam and citing with approval recent cases— *Fox* and *Turner*—that delineated additional factors that would be necessary before a mental exam would be appropriate); *Fox v. The Gates Corp.,* 179 F.R.D. 303, 307–08 (D.Colo.1998) (denying exam, explaining plaintiff had not asserted a separate tort action for intentional infliction of emotional distress, did not allege a specific mental or psychiatric injury or disorder, and did not claim unusually severe emotional distress); *Ford v. Contra Costa County,* 179 F.R.D. 579, 579–80 (N.D.Cal.1998) (denying exam and noting that "the bulk of the reported case law demonstrates that a claim for emotional distress damages, by itself, is not sufficient to place plaintiff's mental condition in controversy"); *O'Sullivan v. Minnesota,* 176 F.R.D. 325, 327–28 (D.Minn.1997) (additional factors listed in *Turner* were not present; thus exam not warranted); *Neal v. Siegel– Robert, Inc.,* 171 F.R.D. 264, 266–67 (E.D.Mo.1996) (deciding that request for damages does not place mental condition in controversy—exam denied); *Lahr v. Fulbright & Jaworski, LLP,* 164 F.R.D. 204, 210–11 (N.D.Tex.1996) (noting that exam would not be warranted based solely on Title VII plaintiff's claim of mental anguish associated with being the victim of discrimination); *O'Quinn v. N.Y. Univ. Med. Ctr.,* 163 F.R.D. 226, 227–28 (S.D.N.Y.1995) (denying exam where, although plaintiff was seeking damages for mental anguish and emotional distress, no separate tort claim had been filed); *Smith v. J.I. Case Corp.,* 163 F.R.D. 229, 231 (E.D.Pa.1995) (plaintiff seeking damages for embarrassment has not placed mental condition in controversy); *Turner v. Imperial Stores,* 161 F.R.D. 89, 95–97 (S.D.Cal.1995) (reviewing several cases and concluding that " 'emotional distress' is not synonymous with the term 'mental injury' " and denying examination); *Bridges,* 850 F.Supp. at 221–222 (citing several cases and concluding that mental exam not warranted where no separate tort claim filed and where plaintiffs did not claim the mental injury suffered by the abusive working conditions were "ongoing" or caused a "psychiatric disorder"); *Sabree v. United Bhd. of Carpenters & Joiners,* 126 F.R.D. 422, 426 (D.Mass.1989) (plaintiff in discrimination suit did not place mental condition in issue by "garden-variety claim of emotional distress"—mental exam not warranted); *Robinson,* 118 F.R.D. at 531 (plaintiff did not place her mental condition in controversy even though she claimed back pay for days lost due to stress and alleged serious effect on psychological well-being); *Cody v. Marriott Corp.,* 103 F.R.D. 421, 422 (D.Mass.1984) (mental condition not placed in controversy by claiming damages for emotional distress). *But see Zabkowicz v. West Bend Co.,* 585 F.Supp. 635, 636 (E.D.Wis. 1984) (allegations of emotional distress from

sexual harassment appropriate basis for allowing order to compel psychiatric examination).

A similar majority—indeed many of the same courts—also recognize that a mental exam is warranted when one or more of the following factors are present: (1) a tort claim is asserted for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of claim for emotional distress damages; and/or (5) plaintiff concedes that her mental condition is in controversy within the meaning of Rule 35. *See Ricks,* 198 F.R.D. at 648–49 (citing *Fox* ); *Fox,* 179 F.R.D. at 307 (citing *Turner,* 161 F.R.D. at 95, *Smith,* 163 F.R.D. at 230, and *Bridges,* 850 F.Supp. at 221–22); *Ford,* 179 F.R.D. at 580 (citing *Turner* ); *O'Sullivan,* 176 F.R.D. at 328; *Smith,* 163 F.R.D. at 230 (citing *Turner* ); *Turner,* 161 F.R.D. at 95; *Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127, 131 (E.D.Pa.1997) (citing *Smith* and four factors). Even where these five factors have not been expressly recognized, "most cases [allowing] mental examinations ... involve[ ] a separate tort claim for emotional distress or an allegation of ongoing severe mental injury." *O'Quinn,* 163 F.R.D. at 228 (bracketed material added) (citations omitted); *Bridges,* 850 F.Supp. at 221–22; *Robinson,* 118 F.R.D. at 528–29; *see also Bethel v. Dixie Homecrafters, Inc.,* 192 F.R.D. 320, 322 (N.D.Ga.2000) (where plaintiff conceded her mental condition was in controversy as "evidenced by state law tort claim for intention infliction of emotional distress"); *Lahr,* 164 F.R.D. at 209 (intentional infliction of emotional distress claim placed mental condition in controversy); *Jansen v. Packaging Corp. of Am.,* 158 F.R.D. 409, 410–11 (N.D.Ill.1994) (allowing exam—ongoing emotional distress claimed); *Peters v. Nelson,* 153 F.R.D. 635, 638 (N.D.Iowa 1994) (plaintiff's claim for intentional infliction of

emotional distress placed her mental condition in controversy); *Lowe v. Phila. Newspapers, Inc.,* 101 F.R.D. 296, 298–99 (E.D.Pa. 1983) (exam allowed—plaintiff seeking compensatory and punitive damages for severe physical and emotional distress).

In the present case, Plaintiff alleges claims for sex discrimination and hostile environment under Title VII and a separate intentional infliction of emotional distress claim under Georgia tort law.[1] Based on the prevailing case law, the Court finds that Plaintiff has placed her mental condition "in controversy" by pursuing her tort claim for intentional infliction of emotional distress.[2] Accordingly, Defendant's motion for a mental examination is **GRANTED,** but subject to conditions.

The Court directs that any such mental examination shall not be permitted until after the final disposition of Defendant's pending motion for summary judgment leaving an issue for trial as to the state tort claim of intentional infliction of emotional distress. Under the authorities cited above, if the tort claim for intentional infliction is dismissed from the case on summary judgment, the Court will not allow the examination based solely on Plaintiff's claim for damages under Title VII for mental anguish and emotional distress. Defendants are instructed to submit a motion and proposed order to the undersigned, specifying the "time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made" as required under Rule 35(a), within 10 days of any final ruling by the district court on the motion for summary judgment leaving any intentional infliction tort issues for trial.

## II.

### Defendant's Motion to Compel and Plaintiff's Motion to Quash and/or for Protective Order

 Plaintiff asserts that Defendant's subpoenas duces tecum to her mental health-

---

1. Plaintiff also alleges claims for non-promotion, a COBRA violation, and breach of contract. As neither party has argued that these additional claims are material to the present motions concerning Plaintiff's mental condition, the Court will not address those claims in deciding this motion.

2. Indeed, at the September hearing, this Court advised counsel for Plaintiff that her pursuit of the state tort claim would likely require that the motion under Rule 35(a) be granted.

care providers must be quashed because they seek records that are privileged.[3] Defendant concedes that the Supreme Court established a psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), but contends that Plaintiff has waived this privilege.

A subpoena must be quashed or modified if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii). The term "privileged" refers to protections afforded by the rules of evidence. *See United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Southern Ry. Co. v. Lanham*, 403 F.2d 119, 134 n. 15 (5th Cir. 1968) (privileges referred to in the discovery rules correspond to those in the rules of evidence).

### A. Federal Law Applies

 Plaintiff asserts that Georgia law defines the parameters of the psychotherapist-patient privilege while Defendant argues federal common law controls. Rule 501 of the Federal Rules of Evidence provides in pertinent part:

> The privilege of a ... person ... shall be governed by principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, [or] person ... shall be determined in accordance with State law.

Fed.R.Evid. 501. The rule does not specify which law of privilege should apply when, as here, the privilege is asserted to both federal question and supplemental state tort claims.

The federal courts, however, have consistently held that the federal law of privilege applies to all claims in a federal question case. *See Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.1992); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226–27 (D.Mass.1997) (citing cases from the 2nd, 3rd, 6th, 7th, and 11th circuits so holding); *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 618 (S.D.Cal. 1999) (citing and agreeing with *Vanderbilt*). Thus, federal common law must be applied to determine whether plaintiff has waived the psychotherapist-patient privilege in this case.

### B. Scope and Waiver of Privilege

In recognizing the psychotherapist-patient privilege the Supreme Court explained that "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Jaffee*, 518 U.S. at 10, 116 S.Ct. 1923 (quoting *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). The Court found that important private and public interests were served by recognizing the privilege and noted that, in contrast, the denial of the privilege was unlikely to lead to evidentiary benefit:

> If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation. Without a privilege, much of the desirable evidence to which litigants such as petitioner seek access—for example, admissions against interest by a party—is unlikely to come into being. This unspoken "evidence" will therefore serve no greater

---

**3.** The Court acknowledges Defendant's assertion that, as Plaintiff is not the recipient of the subpoenas, she does not have standing to bring this motion to quash. *See* (Def. Br. at 6, [Doc. No. 41]). Although Plaintiff did not move to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, it appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121,

1126 (2d Cir.1975); *United States v. Nachamie*, 91 F.Supp.2d 552, 558 (S.D.N.Y.2000); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo. 1997); *United States v. Beckford*, 964 F.Supp. 1010, 1024 n. 12 (E.D.Va.1997); *Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D.Ill.1983); *Fla. ex rel. Butterworth v. Jones Chemicals, Inc.*, No. 90–875–CIV–J–10, 1993 WL 388645, *2 (M.D.Fla.1993). Because the Plaintiff alleges the materials sought are confidential and protected by the psychotherapist-patient privilege, the Court finds she has standing to challenge the subpoenas.

truth-seeking function than if it had been spoken and privileged.

*Id.* at 11–12, 116 S.Ct. 1923.

Although the Court acknowledged that, as with other testimonial privileges, the patient may waive the protection, it declined to "delineate [the privilege's] full contours in a way that would govern all conceivable future questions."[4] The Court did, however, specifically reject a balancing test for determining when the privilege would apply:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.

*Jaffee*, 518 U.S. at 17–18, 116 S.Ct. 1923 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

The Eleventh Circuit has not yet addressed the issue of waiver in relation to the psychotherapist-patient privilege. This Court has found only about a dozen published federal decisions addressing the waiver issue since *Jaffee* established the privilege.[5] While most of these courts agree that a party waives the privilege by placing her mental condition in issue, *see Schoffstall v. Henderson*, 223 F.3d 818, 823(8th Cir.2000), the courts diverge in determining when that has occurred. *Compare Sarko v. Penn–Del*

*Directory Co.*, 170 F.R.D. 127, 130 (E.D.Pa. 1997), *with Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 228–30 (D.Mass.1997). The decisions coming after *Vanderbilt* and *Sarko* have generally split into two camps, with *Vanderbilt* representing the "narrow" view of waiver, and *Sarko* the "broad" view. While most of the courts addressing waiver have discussed other cases in reaching a decision, this Court finds the thorough discussions of both views presented in *Ruhlmann v. Ulster County Dept. Social Servs.*, 194 F.R.D. 445, 448–51 (N.D.N.Y.2000), *Jackson v. Chubb Corp.*, 193 F.R.D. 216, *passim* (D.N.J.2000), and *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, *passim* (S.D.Cal.1999),[6] to be extremely helpful.

This Court, like the court in *Ruhlmann*, has found that, upon close inspection, many of the cases purporting to reject the narrow view and adopt a broad view actually take a middle ground. *See Ruhlmann*, 194 F.R.D. at 449. *See, e.g., Jackson*, 193 F.R.D. at 221–27 & n. 8 (professing to follow the "broad" view but then noting that a "garden variety" claim of emotional distress does not place a plaintiff's mental condition into controversy and the issue of waiver would "not be reached in that situation"). Indeed, many of the cases discussing the two approaches list *Sarko* as the leading example of the broad view, *see Vann v. Lone Star Steakhouse & Saloon*, 967 F.Supp. 346, 349 (C.D.Ill.1997); *Vasconcellos v. Cybex Int'l, Inc.*, 962 F.Supp. 701, 708–09 (D.Md.1997), when, in fact, *Sarko* found waiver based on the fact that the plaintiff was making a claim under the Americans with Disabilities Act alleging she was disabled by clinical depression. *See Sarko*, 170 F.R.D. at 130. The psychiatric condition was thus at the center of the ADA claim, placing it clearly in issue.

---

4. Some limited guidance may be found, however, in a footnote—"we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Jaffee*, 518 U.S. at 18 n. 19, 116 S.Ct. 1923.

5. The Court notes that there are also a handful (6–10) of unpublished cases (usually from the same districts) on the issue.

6. Although the district court modified the magistrate judge's decision in *Fritsch* regarding the outcome on the waiver issue, the discussion of the cases was not affected. *See Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D.Cal.1999), *modifying, Fritsch*, 187 F.R.D. 614.

■ This Court agrees with the discussions in *Jackson* and *Fritsch* that determining whether the plaintiff has placed her mental condition at issue so as to waive the privilege is analogous to, and should be generally consistent with, the analysis conducted when a Rule 35(a) examination is requested. *See Jackson,* 193 F.R.D. at 226 n. 8; *Fritsch,* 187 F.R.D. at 623–24 & n. 4. *But see Fox v. Gates Corp.,* 179 F.R.D. 303, 305–08 (D.Colo. 1998) (denied Rule 35(a) exam on basis that plaintiff had not placed her mental state in controversy and, in the same order, finding waiver of psychotherapist privilege because plaintiff had put her mental condition in issue).[7] Indeed, most of the cases addressing waiver have been consistent with the Rule 35(a) standard by finding waiver only where something other than garden variety emotional distress has been alleged. *See Ruhlmann,* 194 F.R.D. at 449–51 (discussing that the majority of cases require something more than "merely seeking incidental, 'garden-variety,' emotional distress damages"); *see, e.g., Krocka v. City of Chicago,* 193 F.R.D. 542, 544 (N.D.Ill.2000) (privilege remains intact so long as plaintiff limits testimony to humiliation and embarrassment and not any psychological symptoms or conditions); *Speaker ex rel. Speaker v. County of San Bernardino,* 82 F.Supp.2d 1105, 1119–20 (C.D.Cal.2000) (finding it was not necessary to choose between the broad and narrow view; defendant waived privilege as to "perception distortion" by relying upon it as a defense, but no waiver as to any other communications with therapist); *Santelli v. Electro–Motive,* 188 F.R.D. 306, 308–09 (N.D.Ill. 1999) (privilege not waived so long as plaintiff limits her testimony of emotional distress damage to common humiliation, and embarrassment, prohibiting testimony as to clinical diagnosis such as depression and sleeplessness); *Hucko v. City of Oak Forest,* 185 F.R.D. 526, 529–31 (N.D.Ill.1999) (no waiver where plaintiff does not intend to offer evidence of his psychotherapy, testify about

doctor's advice, or offer independent expert testimony to prove his claim of emotional harm); *Vanderbilt,* 174 F.R.D. at 230 (no waiver where plaintiff merely seeks damages for emotional distress unless she uses "the substance of her communications by calling her psychotherapist as a witness ... or by testifying to the substance of the communication herself"); *Sarko,* 170 F.R.D. at 130 (finding waiver because plaintiff placed her mental condition in issue by bringing an ADA claim alleging discrimination on the basis of her clinical depression). *But see, Equal Employment Opportunity Commission v. Danka Indus.,* 990 F.Supp. 1138, 1141 (E.D.Mo.1997) (finding waiver based on claim for emotional distress damages); *Vasconcellos,* 962 F.Supp. at 708–09 (finding waiver where plaintiff alleged emotional distress, but quashing the subpoena as over-broad and limiting defendant to information that is "directly relevant to the lawsuit").

■ As discussed above in reference to Defendant's motion for a Rule 35(a) examination, Plaintiff has put her mental condition in controversy by bringing a tort claim for intentional infliction of emotional distress. Outside of the state tort claim, however, it does not appear that Plaintiff is claiming anything other than garden variety emotional distress damages (i.e., as to her Title VII claims). Thus, this Court once again finds that the outcome on this motion is dependent upon whether Plaintiff's intentional infliction of emotional distress claim survives summary judgment. Because the Court finds that the tort claim of intentional infliction may not survive summary judgment, and because the Supreme Court has determined that important public and private interests are served by protecting psychotherapist-patient communications, this Court concludes that Plaintiff's psychotherapy records shall not, *at this time,* be produced.[8] Defendant's motion to compel is accordingly **DENIED** as it pertains to such records, at this time. Plaintiff's motion to quash is **GRANTED** to the extent it

---

7. This Court agrees with the *Fritsch* court's finding that the *Fox* decision is internally inconsistent. The Court further notes that, despite finding waiver, the *Fox* court actually declined to compel production of the records because plaintiff averred that her damages for emotional dis-

tress "ended prior to her first counseling session." *See Fox,* 179 F.R.D. at 305–06.

8. The Court notes that it uses the term "psychotherapy" to include any mental professional that would fall under *Jaffee's* protection.

pertains to psychotherapy records. In the event that Plaintiff's intentional infliction of emotion distress claim survives summary judgment, or her Title VII claims should be amended to seek more than garden variety damages for emotional distress, Defendant may renew its efforts to seek such records and to compel production of the records by subpoena.[9] In light of this ruling, Plaintiff's motion for a protective order is **DENIED** as moot.

The Court instructs, however, that the privilege extends only to the *communications* between Plaintiff and her therapist(s) and does not protect other information such as billing statements or dates of therapy.[10] *See, e.g., Vanderbilt*, 174 F.R.D. at 230; *Hucko*, 185 F.R.D. at 531; *Jackson*, 193 F.R.D. at 219 n. 4; *Santelli*, 188 F.R.D. at 310. In addition, the privilege protects only psychotherapy records, not general medical records. *See Jaffee*, 518 U.S. at 10, 116 S.Ct. 1923 (specifically distinguishing the need for a psychotherapist-patient privilege from a physician-patient privilege); *accord Fritsch*, 187 F.R.D. at 633 (no physician-patient privilege under federal common law); *Fox*, 179 F.R.D. at 305 (same).

## C. Remaining Specific Requests in Defendant's Motion

In addition, the Court makes the following rulings on the remaining specific requests in Defendant's motion to compel:

### (1) Interrogatory No. 33:

**DENIED;** the request, requiring Plaintiff to identify each and every medical diagnosis Plaintiff has received for any medical condition, is over-broad.

### (2) Interrogatory No. 34:

**GRANTED;** the information sought—identification of all medication taken as a

result of the alleged harassment, emotional distress, or discrimination—is not itself privileged and answering will not waive Plaintiff's assertion of privilege. Plaintiff shall respond by amended interrogatory answer on or before April 6, 2001.

### (3) Request for Production No. 15:

**DENIED;** the request, requiring Plaintiff to produce all documents that relate to any medical treatment received by Plaintiff in the last ten years, is over-broad.

### (4) Deposition Questions Listed at pp. 6–7 of Brief:

**GRANTED IN PART and DENIED IN PART.**

Defendant has identified at pages 6–7 of its brief six questions that Plaintiff refused to answer during her deposition. *See* [Doc. No. 49]. These questions were posed at pages 64–66, 84, and 99 of Plaintiff's deposition. As the Court discussed above, only the communications between Plaintiff and her psychotherapist(s) are protected—not the fact that therapy occurred or the dates upon which it occurred. *See Vanderbilt*, 174 F.R.D. at 230; *Hucko*, 185 F.R.D. at 531; *Jackson*, 193 F.R.D. at 219 n. 4; *Santelli*, 188 F.R.D. at 310. Likewise, any medications Plaintiff may have taken in the relevant time period would not be privileged. An issue arises, however, when Defendant attempts to pierce the privilege by asking for information regarding a psychiatric diagnosis and the reason for prescribed treatment.

The Court finds that the first three questions listed in the brief by Defendant—seeking information regarding diagnoses of mental conditions and medications therefor—seek privileged information and will not be compelled. The motion is **DENIED** as to these three questions. As to the fourth question listed in the brief,[11] the Court finds

---

9. In the brief and at the hearing, Plaintiff has attested that she does not intend to refer to her psychological treatment or diagnosis or rely on any expert testimony as to her mental condition. If Plaintiff should change position as to this issue, the Court will entertain a renewed motion by Defendant to obtain the records.

10. Indeed, as it appears Plaintiff is maintaining a COBRA claim in this case, the dates and billing statements may be relevant to that claim and would be discoverable.

11. Q: Are you claiming that as a result of the way you were treated at Stanley and the way you were terminated at Stanley that you suffered from depression?

that Plaintiff, in substance, answered the question at page 67, lines 21–22, of her deposition. Plaintiff is not required to disclose whether she has been professionally diagnosed by her doctor with depression (as a clinical/medical term). The motion to compel as to this question is also **DENIED.**

As to the last two questions listed in the brief on page 7,[12] this information is not privileged and Plaintiff shall answer the questions. However, as to these two questions, it is not necessary that Plaintiff be redeposed. She may answer in writing, by providing sworn answers to the last three questions, listed at page 7 of Defendant's brief, on or before April 6, 2001.

### III.

#### *Conclusion*

In summary, Defendant's motion to compel medical discovery, [Doc. No. 49–1] is **DENIED** as to interrogatory number 33 and request for production number 15; **GRANTED** as to Defendant's interrogatory number 34, and the last two deposition questions listed at page 7 of Defendant's brief; and **DENIED** as to the other deposition questions.

**12.** The two questions were as follows:
Q: During the time you were employed at Stanley, did you ever receive any marriage counseling?

Defendant's motion for psychiatric exam under Rule 35(a) [Doc. No. 49–2] is **GRANTED**, but any such examination shall not be permitted until after final disposition of Defendant's motion for summary judgment leaving issues to be tried as to the intentional infliction of emotional distress claim. If no such issues remain, the examination shall not be ordered. The Defendant may present an order at the appropriate time under Rule 35(a) in the event an examination is permitted under this order.

Plaintiff's motion to quash [Doc. No. 40–1] is **GRANTED** to the extent the subpoenas seek privileged psychotherapy records. Defendant's motion to compel [Doc. No. 49–1] is **DENIED** as it pertains to such records, subject to renewal should the intentional infliction claim survive summary judgment. Plaintiff's motion for a protective order [Doc. No. 40–2] is **DENIED** as moot.

Q: All right. How long have you been taking Wellbutrin?