**Vincent KROCKA, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 98 C 4644.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 7, 2000.

Terrance Anthony Norton, IIT–Kent· Law Offices, Paul D. Geiger, Chicago, IL, for Plaintiff.

Brian L. Crowe, Shefsky, Froelich & Devine, Ltd., Naomi Ann Avendano, Daphna Leah Boros, Rachel L. Kaplan, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of the defendant City of Chicago to unseal documents retained *in camera* and for an order enforcing a subpoena.

## I.  BACKGROUND

On July 28, 1998 plaintiff, a Chicago police officer, filed a complaint alleging that the defendant, in retaliation for a previous lawsuit plaintiff had brought, wrongfully suspended him without pay in violation of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12111 *et seq.* The documents at issue here are records pertaining to plaintiff's treatment for alcoholism at Rush Behavioral Health Center; the subpoena sought to compel the testimony of plaintiff's psychiatrist, Dr. Peter Fink. Plaintiff argues that the records and testimony defendant seeks are protected by the psychotherapist-patient privilege and that, in any case, they are irrelevant to plaintiff's claims.

In his complaint, plaintiff alleges defendant's actions caused him "pain and suffering and emotional distress, anxiety, embarrassment and humiliation." (*Complaint,* ¶ 26). More specifically, during his deposition, taken in January and February of 2000, plaintiff testified that his suspension without pay in June of 1998, caused him to go "off the deep end." (*Defendant's Motion* ("*Def.Mot.*"), Ex. A, at 163). He "locked [himself] in the bedroom for two days drinking whiskey." (*Id.,* at 163–64). As a result, plaintiff sought an evaluation, counseling and substance abuse treatment at Rush Behavioral Health ("Rush"), where he was treated by Dr. Peter

Fink, a psychiatrist whom he had been seeing since 1995 or 1996. (*Id.*, at 162–63). Plaintiff testified that, in these sessions, he and his doctor discussed defendant's treatment of him. (*Id.*, Ex. B, at 244–45). Further, plaintiff indicated that he was claiming emotional stress and emotional damages relative to the allegations of his lawsuit. (*Id.*, at 243).

Given such testimony, on or about November 12, 1999, defendant served plaintiff with Interrogatories and Requests for Production of Documents relating to any medical treatment which plaintiff received "as a result of any acts of defendant which form the basis of Plaintiff's pending complaint." (*Id.*, Ex. C). Based on plaintiff's identification of his medical treaters, defendant issued a deposition subpoena to Dr. Fink and records subpoenas to both Dr. Fink and Rush on or about January 27, 2000. Dr. Fink did not comply with the records subpoena and, as a result, the scheduled deposition was canceled. On February 21, 2000, counsel for Rush filed a Motion to Quash defendant's subpoena.

On February 22, 2000, the court conducted a conference call with the parties, at which plaintiff sought to have defendant's deposition and treatment records subpoenas quashed. Plaintiff agreed to limit the scope of his claim to damages resulting from the embarrassment and humiliation suffered. Thereafter, in a letter dated February 29, 2000, plaintiff's counsel stated, "Plaintiff's emotional distress claim will be limited to the negative emotions he experienced ... and he will not be seeking to admit evidence of any resulting symptoms or conditions that he might have suffered." (*Id.*, Ex. G).

Now, defendant is concerned that these limitations are not sufficient, for several reasons. First, defendant presupposes that any testimony regarding plaintiff's two-day drinking binge would put his treatment at issue, and defendant would be prejudiced if not allowed discovery on this matter. Second, in plaintiff's draft pre-trial order, he named as a witness an individual who either served as a counselor or participated in treatment with plaintiff at Rush. Third, plaintiff makes multiple references to his psychiatric treatment in his Statement of Contested Issues of fact and his trial brief. Defendant further claims that plaintiff's mental state will be put into issue at trial by plaintiff's expert witness, Raymond Risley, former Assistant Deputy Superintendent of the Internal Affairs Division for the City of Chicago Police Department. Defendant bases this conclusion on Risley's deposition testimony that, in his former position, he would have taken into account plaintiff's mental state of depression when considering whether or not to sustain the disciplinary action taken against plaintiff. Finally, in his Summary of Damages, plaintiff asks for $100,000 for "pain, suffering and emotional injury."

## II. *ANALYSIS*

The Supreme Court has recognized a federal common law psychotherapist-patient privilege protecting the confidential communications between a patient and a licensed psychotherapist during diagnosis or treatment. *See Jaffee v. Redmond*, 518 U.S. 1, 15–16, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).[1] In doing so, the Court felt an important public interest in facilitating appropriate mental health treatment would be served by promoting "an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." 518 U.S. at 10, 116 S.Ct. at 1928. Like other privileges, however, the psychotherapist-patient privilege can be waived. 518 U.S. at 15 n. 14, 116 S.Ct. at 1931 n. 14. The Court in *Jaffee* did not define the "full contours" of the privilege or when or how it might be waived, leaving

---

1. Federal Rule of Evidence 501 states:
   [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may interpreted by the courts of the United States ... However ... with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.
   Accordingly, as this is a federal question case, we look to federal common law-as opposed to Illinois statutes-to determine the application of a privilege.

those issues to be determined on a case-by-case basis. 518 U.S. at 18, 116 S.Ct. at 1932.

In this case, defendant asserts that plaintiff has impliedly waived his psychotherapist-patient privilege by placing his treatment at issue. In arguing against waiver, plaintiff relies on his February 29th letter, assuring the court and defendant that he will seek only damages for embarrassment and humiliation, and the decision in *Santelli v. Electro-Motive*, 188 F.R.D. 306 (N.D.Ill.1999). In *Santelli*, the court stated that "[a] party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." 188 F.R.D. at 309. At the same time, however, the court acknowledged that a party could limit the scope of their emotional distress claims to a degree that they are no longer injecting psychiatric treatment, or symptoms or conditions, into the case. 188 F.R.D. at 309. The limitations in *Santelli*, however, were far more detailed than a casual assurance in an unsworn letter.

The court in *Santelli* precluded the plaintiff from introducing evidence about emotional distress that necessitated care or treatment by a physician, limiting the evidence to negative emotions she felt as a result of the defendant's alleged conduct. More specifically, the *Santelli* court precluded plaintiff

> from introducing the facts or details of her treatment; she may not offer evidence through any witness about symptoms or conditions that she suffered (*e.g.*, sleeplessness, nervousness, depression); and she will not be permitted to offer any evidence regarding a medical or psychological diagnosis. Rather, she will be permitted to testify only that she felt humiliated, embarrassed, angry or upset because of the alleged discrimination.

188 F.R.D. at 309. Obviously, plaintiff's promise that he will only seek damages for humiliation and embarrassment pales in comparison to the limitations in *Santelli;* especially in view of plaintiff's deposition testimony and pre-trial materials, which certainly inject the issue of his psychological treatment into this case.

Accordingly, if plaintiff wishes to maintain the privilege as to the evidence at issue, he must be subject to the same limitations as the plaintiff in *Santelli*. He will be allowed only to testify as to his humiliation and embarrassment-not as to any psychological symptoms or conditions. He also may not introduce any evidence of treatment, nor may he call witnesses to testify about his psychological symptoms, treatment, or condition. This is the only way in which plaintiff will not be found to have waived the privilege.

## III.  *CONCLUSION*

For the foregoing reasons the defendant's Motion to Unseal Documents retained *in camera* and to Enforce Defendant's Subpoena to Plaintiff's Medical Treater is DENIED, subject to the conditions on plaintiff's use of evidence stated in this order.