**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

and

Giles L. Jefferson, Plaintiff–Intervenor,

v.

**AREA ERECTORS, INC., Defendant.**

No. 07 C 02339.

United States District Court,
N.D. Illinois,
Western Division.

Nov. 27, 2007.

Ann M. Henry, Equal Employment Opportunity Commission, Chicago, IL, Deborah J. Powers, U.S. Equal Employment Opportunity Commission, Milwaukee, WI, John C Hendrickson, United States Equal Employment Opportunity Commission, Chicago, IL, Jeffrey Irvine Cummings, Tiffany Fonseca Glanville, Miner, Barnhill & Galland, Chicago, IL, Sarah E. Siskind, Miner, Barnhill & Galland, P.C., Madison, WI, for Plaintiffs.

Bradley G. Kennedy, Daniel D. Barker, David Minko, Jonathan P. Bruni, Murphy Desmond SC, Madison, WI, James D. Zeglis & Associates, Rockford, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

P. MICHAEL MAHONEY, United States Magistrate Judge.

This case is brought under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), and Title I of the Civil Rights Act of 1991. Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), alleges that Defendant, Area Erectors Inc., terminated Giles L. Jefferson and other African American employees because of their race. Plaintiff further alleges that Defendant terminated Mr. Jefferson's employment in retaliation for Jefferson's complaints about racial discrimination and in retaliation for filing charges with the EEOC.

On September 28, 2007, Plaintiff filed a Motion for a Protective Order. On October 3, 2007, Defendant filed a Motion to Compel. Both of these motions concern the same discovery dispute. At issue is whether certain EEO–3 reports within the EEOC's possession along with claimants' medical/psychological, arrest, and prior litigation records are properly the subject of discovery.

### I. EEO–3 Reports Within the Possession of the EEOC:

Request No. 1 of Defendant's Third Request for Production sought all EEO–3 reports submitted to the EEOC by sixteen various labor organizations since January 1, 1985. Pursuant to 42 U.S.C. § 2000e–8(c) and 29 C.F.R. § 1602.22, local unions having 100 or more members must file a Local Union Report EEO–3 ("EEO3 report") with the EEOC on a biennial basis. Plaintiffs Response to Defendant's Motion to Compel at I. Defendant claims these reports are relevant because they identify the racial makeup of the pool of union employees from which Defendant does its hiring.

However, the EEOC has objected to producing these EEO3 reports. The EEOC bases it objections on 42 U.S.C. § 2000e–8(e), which provides:

(e) Prohibited disclosures; penalties

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant

to its authority under this section prior to the institution of any proceeding under this subchapter *involving* such, information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

42 U.S.C. § 2000e–8(e) (emphasis added). The question becomes, does this proceeding "involve" the EE03 reports?

■ The answer is no. This action does not "involve" the EE03 reports because this case concerns the wrongful termination of Defendant's employees based on race, not the wrongful refusal to hire. Therefore, the racial identity of the pool of employees available to Defendant is not at issue, and this case does not "involve" the reports that contain such data. Because Defendant has failed to demonstrate how this case "involves" the EE03 reports, the court will not compel the EEOC to produce them at this time.

## II. Claimant's Medical/Psychological Records:

Defendant's Request to Produce Number 1.i states:

1. For each individual for whom the EEOC is claiming relief, produce the following documents: i. A signed and notarized Authorization to Release Medical Records ... for each healthcare provider such individual has sought treatment from for the past five years and/or in connection with any damages claimed on behalf of such individual in this action.

Defendant's Memorandum of Law in Support at 10.[1] Defendant insists that claimants' past five years of medical and psychological records are discoverable because Plaintiff has made a claim for compensatory damages rooted in the emotional distress of the claimants. *See* Amended Complaint, Prayer for

Relief, ¶ E (wherein EEOC requests that the court "[o]rder Area to make [claimants] whole by compensating them for ... injury to professional reputation, emotional pain, suffering, loss of enjoyment of life, and humiliation...."). In order to identify sources of claimants' emotional distress other than Defendant's conduct, Defendant seeks production of claimants' medical and psychological records.

Plaintiff objected by stating, in relevant part, that such discovery is:

a gross invasion of privacy, a breach of the doctor/patient privilege, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.... To the extent section (I) is requesting information regarding treatment sought for medical and/or psychological conditions that were caused by the discriminatory actions of Area Erectors, and for which the individual is claiming damages, EEOC will provide the information.

Plaintiff's Motion for a Protective Order at 3. It is the EEOC's position that a garden variety compensatory damages claim rooted in emotional distress does not open the door to extensive discovery into claimants' psychological records so long as the claimants do not intend to rely on their psychological symptoms, conditions, or treatment to support their claim for compensatory damages. *See Id.* at 5.

■ The broad scope of discovery provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Since this case is based upon a federal cause of action, Title VII, the question whether the desired medical and psychological records are privileged is a question that must be answered pursuant to the federal common law. Fed.R.Evid. 501; *Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981).

■ Federal common law recognizes a psychotherapist-patient privilege. *Jaffee v.*

---

1. Defendant has since offered to narrow this request to seek only medical records relating to workers compensation claims for all claimants and psychological records for each individual claimant who is seeking compensatory damages for emotional distress. *See* Defendant's Memorandum of Law in Support at 17–18. The EEOC responded by offering to produce documents from workers' compensation health care providers indicating dates the claimants were unable to work because of work-related injuries. *See* Plaintiffs Motion for a Protective Order at 4. Neither party elected to accept the other's proposed compromise.

*Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The state of Illinois also recognizes this privilege. 740 ILCS 110; *Reda v. Advocate Health Care,* 199 Ill.2d 47, 262 Ill.Dec. 394, 765 N.E.2d 1002, 1007–08 (2002). Like other privileges, the psychotherapist-patient privilege can be waived. *Jaffee,* 518 U.S. at 15 n. 14, 116 S.Ct. 1923, 135 L.Ed.2d 337. One way a privilege holder waives their privilege is by placing the privileged communications directly at issue in a lawsuit. *Santelli v. Electro–Motive,* 188 F.R.D. 306, 308 (N.D.Ill.1999). After all, a party who "asserts a claim as a sword should not also be permitted to assert a privilege as a shield to deflect questions regarding the claim." 6 Moores Federal Practice, § 26.47[5] (Matthew Bender 3d ed.).

At issue here is whether claimants have waived the psychotherapist-patient privilege by claiming compensatory damages rooted in "emotional pain, suffering, loss of enjoyment of life, and humiliation." There is a mix of authority on the subject, as the parties' briefs illustrate.

■ However, in the Northern District of Illinois, Judge Kennelly's opinion in *Santelli v. Electro–Motive* supplies the most appealing approach. 188 F.R.D. 306, 307–310 (N.D.Ill.1999); *see also Krocka v. City of Chicago,* 193 F.R.D. 542, 544 (N.D.Ill.2000); *Saket v. American Airlines, Inc.,* 2003 WL 685385, at *1 (N.D.Ill.2003). *Santelli* concerned a Title VII Plaintiff claiming compensatory damages for the emotional distress she suffered as a result of defendant's alleged discrimination. *Id.* at 307. The mere existence of this emotional distress claim was not held to constitute a waiver of the Plaintiff's psychotherapist-patient privilege. Rather, the court determined that because Plaintiff's claim was limited to compensation for "the negative emotions that she experienced essentially as the intrinsic result of the defendant's alleged conduct," and because Plaintiff was "barred from introducing evidence of any resulting symptoms or conditions that she might have suffered," Plain-

tiff's claim was narrowed to such an extent that she had successfully avoided waiving her psychotherapist-patient privilege. *Id.* at 309. The court went on to recognize that "a party waives her psychotherapist-patient privilege by electing to inject into a case either the fact of her treatment or any symptoms or conditions that she may have experienced." *Id.*

Looking to the case at hand, the EEOC has attempted to impose *Santelli* type limitations on its emotional distress claims. The EEOC states:

> If EEOC identifies any claimants who have sought psychological treatment due to discrimination at Area Erectors, and the claimant wishes to base his or her claim for compensatory damages on the psychological symptoms or conditions he or she suffered and the treatment he or she sought, EEOC will produce psychological records *related to the treatment sought because of discrimination.* However, if the claimant does not want to rely on his or her treatment to support a compensatory damages claim, EEOC will not produce records of treatment, but will agree that the claimant can testify only about the negative emotions he or she experienced as a result of the discrimination and cannot testify about psychological symptoms, conditions, or treatment to support his or her claim for compensatory damages.

Plaintiff's Motion for a Protective Order at 7 (emphasis added).

However, the EEOC's proposed limitations do not go far enough. The court holds that the EEOC is forced to choose between: 1) tailoring claimants' emotional distress claims to the "garden variety," thereby closing the door to any discovery into claimants' treatment and symptoms [2] and agreeing not to introduce any evidence of the same; or 2) agreeing to waive claimants' psychotherapist-patient privilege in exchange for the freedom to introduce evidence of claimant's treatment and symptoms in support of their emotional distress claims.[3] *See, e.g., Santos v. Boeing*

---

2. Examples of symptoms include nervousness, sleeplessness and depression. *Saket,* 2003 WL 685385, at *1.

3. The waiver of the psychotherapist-patient privilege opens the door to discovery of alternate

causes of claimants' emotional distress. The EEOC's proposed limitations were deficient because they only offered records directly related to the alleged discrimination. Waiver opens the door much wider than the EEOC proposed, making alternate causes of claimants' emotional dis-

*Co.*, No. 02 C 9310, 2003 WL 23162439 (N.D.Ill. Oct.21, 2003) (discussing "garden variety" type emotional distress claim).

The court orders the EEOC to identify those claimants, if any, who intend to waive their psychotherapist-patient privilege and to produce all relevant medical and psychological records pertaining to those claimants. Once Defendant knows the identity of the claimants who have waived their psychotherapist-patient privilege and has received this initial disclosure, Defendant may seek further discovery from the court as appropriate. Claimants willing to limit their emotional distress claim to the negative emotions that they experienced as the intrinsic result of the defendant's alleged conduct have avoided waiving their psychotherapist-patient privilege and are not required to produce any psychological or medical records.

### III. Arrest Records

■ Interrogatory No. 5 of Defendant's Second Set of Interrogatories states:

For Each individual for whom the EEOC is claiming relief, identify any and all situations or events which have led to said individual's arrest, incarceration or conviction.

Defendant's Memorandum of Law in Support at 20. The EEOC objected to providing information about claimants' arrests, but agreed to produce information about incarcerations and convictions. Defendant responds that "[i]t is the conduct on the job which may or may not have led to an arrest or conviction that Defendant is interested in investigating." *Id.* at 22.

In the event that the Defendant is able to articulate some particularized suspicion that a claimant may have been arrested for work related misconduct conduct, the court will consider compelling the production of his or her arrest records. However, without a particularized showing, the speculative benefit of such a wide sweeping inquiry is outweighed by the threat of annoyance, embarrassment and oppression.[4] *See* Fed.R.Civ.P. 26(c). Claimant's arrest records will not be compelled at this time.

### IV. Prior Litigation Records

■ Defendant's Interrogatory No. 4 states:

For each individual on behalf of whom the EEOC is claiming relief, identify all litigation that such individual has been involved in as a party for the past five years.

Defendant's Memorandum of Law in Support at 18. The EEOC agreed to produce only information relating to civil rights violations, claiming that the identification of any other prior litigation is an invasion of privacy, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.*

However, claimants' prior litigation concerning personal injuries could lead to the discovery of admissible evidence. For example, a claimant's testimony about the extent of his or her injuries could be used to impeach later testimony about his or her availability to work. However, defendants have failed to identify any impeachment value in discovery relating to other types of civil cases. Therefore, the court will compel the EEOC to identify only those prior cases which concern the personal injury of a claimant, whether that injury was work related or not. No other prior litigation needs to be identified at this time.

---

tress discoverable wherever waiver has been established.

4. The usefulness of claimants' arrest records is questionable for two reasons: 1) an arrest record (as opposed to evidence of a conviction) can not be used to impeach a witness's credibility under F.R.E. 609(a); and 2) Defendant's 30(b)(6) representative, Steve Schrader, admitted during his deposition that Defendant did not have any policy against hiring convicted felons. This admission disproves Defendant's suggestion that, if the arrest would have led to a termination of the arrested employee, newly revealed evidence of the arrest could act to limit the damages owed Plaintiff. If Defendant had no qualms about hiring a convicted felon in the first place, why would it fire an employee who was merely arrested, but never charged?