ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Sand Point Services, LLC | ) ASBCA Nos.   61819, 61820 |
| | ) |
| Under Contract No.    NNG14WA50C | ) |

APPEARANCES FOR THE APPELLANT:     Nathan Rouse, Esq.
Traeger Machetanz, Esq.
  Davis Wright Tremaine LLP
  Seattle, WA

Eric S. Lammers, Esq.
  Rees Broome P.C.
  Tysons Corner, VA

Neil Lowenstein, Esq.
Anthony J. Mazzeo, Esq.
  Vandeventer Black LLP
  Norfolk, VA

APPEARANCES FOR THE GOVERNMENT:     Scott W. Barber, Esq.
  NASA Chief Trial Attorney
David S. Schuman, Esq.
  Senior Trial Attorney
  NASA Goddard Space Flight Center
  Greenbelt, MD
Paul H. Kim, Esq.
  Trial Attorney
  NASA Ames Research Center
  Moffett Field, CA

OPINION BY ADMINISTRATIVE JUDGE WITWER

These appeals involve disputes arising out of a contract between the National Aeronautics & Space Administration (NASA) and appellant Sand Point Services, LLC (SPS) to repair the Wallops Flight Facility's aircraft parking apron (hereinafter "the project"). SPS alleges that NASA constructively changed the contract by initially waiving minor deviations from the contract specifications, and then insisting upon strict compliance with those specifications. It also alleges that insistence upon strict compliance with the specifications resulted in economic waste. Further, SPS alleges that it incurred extra costs and encountered delays because of a differing site condition.

Fidelity and Deposit Company of Maryland (F&D), a non-party surety, furnished performance and payment bonds under the Miller Act, 40 U.S.C. § 3131 *et seq.*, relating to the project at issue in these appeals. On October 16, 2020, NASA served F&D with a subpoena *duces tecum*. F&D has moved to quash the subpoena in its entirety. For the reasons set forth below, F&D's motion is **GRANTED**.

Appellant also moves to quash the subpoena served on F&D. Additionally, appellant moves to quash a subpoena *duces tecum* issued to, but not yet served on, David Bresel, an attorney employed by F&D. For reasons set forth below, appellant's motion to quash the subpoena directed to F&D is **DENIED** as moot and its motion to quash the subpoena directed to Mr. Bresel is **DISMISSED**.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

I.      The Miller Act Dispute

On September 8, 2014, NASA entered into Contract No. NNG14WA50C with appellant to repair the Wallops Flight Facility's aircraft parking apron (R4, tab 1 at 1-2, 4, tab 3 at 3). The contract required appellant to obtain a bond (R4, tab 1 at 4), which it obtained from F&D (F&D mot. at 2). In 2016, F&D received a claim from appellant's subcontractor, Atlantic Contracting and Material, Inc. (ACM), on the Miller Act payment bond furnished by F&D (*id.*). After performing an investigation commensurate with its role as surety, F&D denied ACM's claim (*id*).

ACM subsequently filed suit in Federal district court. Appellant intervened in the litigation and the same counsel represented F&D and appellant (*id.*). Appellant argued, *inter alia*, that the Miller Act action was premature because ACM had not completed its subcontract work to NASA's satisfaction. In support of its argument, appellant's general manager, Christopher Woodruff, submitted a declaration, alleging that "ACM has not fully and duly performed its subcontract work under the terms of the ACM subcontract" (gov't opp'n, ex. 7, Woodruff decl., ¶ 16). In September 2017, the parties to the district court litigation reached an agreement and stipulated to a dismissal with prejudice of ACM's suit (F&D mot. at 2).

II.     Appeals Pending Before the Board

In September 2018, appellant filed two notices of appeal and complaints with the Board. In the first appeal, which we docketed as ASBCA No. 61819 (hereinafter "constructive change and waste appeal"), appellant admits that the project's concrete texture and mooring eyes were deficient, but alleges that those deficiencies involve minor issues. Moreover, appellant alleges that NASA constructively changed the contract when it waived strict compliance with the specifications by accepting the concrete texture and

2

mooring eyes, but then insisted upon strict compliance with the specifications. Appellant also alleges that insisting upon strict compliance with the specifications caused economic waste.

In the second appeal, which we docketed as ASBCA No. 61820 (hereinafter "differing site condition appeal"), appellant concedes that there were delays, but alleges that those delays were attributable to NASA's failure to provide directions after appellant notified it of a differing site condition.

III.    The Board's August 5, 2019 Decision

In October 2018, NASA filed a motion to dismiss and, in the alternative, motion for summary judgment. In moving to dismiss, NASA argued that the Board lacked jurisdiction because the contracting officer's final decision (COFD) was based on a suspicion of fraud. Specifically, NASA contended that the claims appeared to be fraudulent because Mr. Woodruff admitted in his declaration submitted in the Miller Act litigation that ACM's work was incomplete and not in conformance with the contract specifications. In moving for summary judgment, NASA argued that Mr. Woodruff's admission entitled NASA to judgment as a matter of law, because it demonstrated that appellant's failure to perform in accordance with the specifications was ACM's fault. Finally, NASA argued that a bilateral modification released appellant's differing site condition claim.

On August 5, 2019, the Board denied NASA's motions (hereinafter "Decision"). *Sand Point Servs., Inc.*, ASBCA Nos. 61819, 61820, 19-1 BCA ¶ 37,412. Of relevance here, in denying NASA's motion to dismiss, the Board held that the COFD was not based solely upon a suspicion of fraud, and that the Board could resolve the appeals without making factual determinations of fraud. *Id.* at ¶ 181,857. In denying NASA's motion for summary judgment, the Board found that appellant "did not admit that the failure to comply with the specifications was ACM's fault." *Id.* Further, the Board concluded that, even if appellant had made such an admission, the "issue is not material to SPS's constructive change and waste appeal." *Id.*

IV.    The Board's August 28, 2019 Discovery Order

While NASA's dispositive motions were pending before the Board, the parties engaged in discovery. On May 15, 2019, NASA filed a motion to compel discovery related to the dispute between appellant and its subcontractor. On August 15, 2019, after receipt of the Decision, NASA renewed its motion to compel.

The Board denied NASA's motion to compel in an order dated August 28, 2019 (hereinafter "Order"). The Order reiterated that the Miller Act dispute was irrelevant to the appeals because "even if SPS's dispute with its subcontractor established that it was

3

the subcontractor's fault that performance did not meet the specifications, that fact would not preclude SPS's claim" (Order at 2). The Order instructed NASA to consider whether it needed to recalibrate future discovery requests in light of the Decision. If NASA concluded that such recalibration was unnecessary, the Board ordered NASA to conduct good faith discussions with SPS to explain how the information sought was relevant in light of the Decision. If such discussions proved unproductive, the Order permitted the government to "file a motion to compel providing such an explanation to the Board" (*id.*). To date, no motions to compel the production of information related to the Miller Act dispute have been submitted to the Board.

V.      Subpoenas *Duces Tecum*

        Turning to the issue of the subpoenas, on October 7, 2020, NASA requested the subpoenas at issue here, which the Board issued on October 14. On October 16, F&D accepted service of the subpoena directed to the surety.[1] That subpoena required F&D to produce for a deposition the person most knowledgeable or person most qualified "to discuss all non-privileged matters related to any claim or demand for payment from [ACM] concerning [SPS] and the project under contract NNG14WA50C, between September 2014 and the present" (F&D mot., ex. 7 at 1-2). Similarly, the subpoena requested all non-privileged records related to ACM's Miller Act claim for the same period (*id.* at 2).

        Regarding the subpoena directed to Mr. Bresel, the parties represent that the subpoena has not been served.[2] (F&D mot. at 1 n.2; app. mot. at 3; gov't opp'n at 3) Like the subpoena directed to F&D, the subpoena requested by NASA and directed to

---

[1] The subpoena was directed to Zurich North America (F&D mot., ex. 7). F&D represents that Zurich North America is a trade style used by F&D and its affiliates, that F&D is the legal entity that issued the bonds relating to the project at issue in these appeals, and that F&D is the entity with standing to move to quash the subpoena (F&D mot. at 1 n.1). In the event the Board denies its motion to quash, F&D requests that we reissue the subpoena in the name of F&D (*id.*). NASA counters that such action is unnecessary because NASA clarified elsewhere on the subpoena that it was seeking testimony and records from Zurich North America "or any of its subdivisions, subunits, affiliates, or related entities, *including but not limited to Fidelity & Deposit Company of Maryland*" (gov't opp'n at 1 n.1) (quoting F&D mot., ex. 7). Because we grant F&D's motion to quash, we need not address F&D's request to reissue the subpoena.

[2] It is not clear from the briefs whether Mr. Bresel works directly for F&D or for one of its related entities. F&D asserts, however, that Mr. Bresel is "its employee" (*see* F&D mot. at 1 n.2). F&D did not move, at this time, to quash the subpoena directed to Mr. Bresel, but reserved the right to do so upon proper service (*id.*).

4

Mr. Bresel seeks testimony and records related to ACM's Miller Act claim (app. mot., ex. 1).

On October 26, F&D moved to quash the subpoena directed to the surety. That same day, appellant also moved to quash the subpoena directed to the surety, as well as to quash the subpoena directed to Mr. Bresel. NASA opposed the motions on November 16. F&D filed a reply on December 2. Appellant elected to rest on its opening motion.

VI.     Contentions of the Parties

F&D challenges the subpoena directed to it on three grounds. First, F&D argues that the subpoena is overbroad and seeks information not relevant to the proceedings before the Board. Second, F&D argues that the subpoena seeks information that is duplicative or cumulative of information already in NASA's possession or available to NASA through routine discovery from appellant. Finally, F&D argues that the subpoena seeks information protected by the attorney-client privilege and the work product doctrine, and that, under the common interest doctrine, F&D did not waive such protections by disclosing the information to appellant during the pendency of the Miller Act claim and litigation.

Appellant challenges the subpoenas directed to F&D and Mr. Bresel on two grounds. First, appellant argues that the subpoenas seek information not relevant to the issues raised in the proceedings before the Board. Second, appellant argues that the subpoenas seek information protected by the attorney-client privilege and the work product doctrine, and that, under the common interest doctrine, appellant did not waive such protections by disclosing the information to F&D or Mr. Bresel during the pendency of the Miller Act claim and litigation.

In opposition to F&D's motion, NASA responds that the subpoena directed to F&D seeks relevant, non-privileged information that will not unduly burden F&D to produce. In opposition to appellant's motion to quash, NASA argues that appellant lacks standing to challenge subpoenas directed to non-parties. NASA further argues that the Board lacks jurisdiction to consider appellant's challenge to the subpoena directed to Mr. Bresel because the subpoena has not been served.

DECISION

I.     Legal Standard

The Contract Disputes Act (CDA) provides that members of an agency board of contract appeals, such as the ASBCA, may "require by subpoena the attendance of witnesses, and production of books and papers, for the taking of testimony or evidence by

5

deposition or in the hearing of an appeal by the agency board" (41 U.S.C. § 7105(f)). Board Rule 22 governs subpoenas and provides, in pertinent part, that "[u]pon written request of either party, or on his or her own initiative, an Administrative Judge may issue a subpoena requiring" testimony and records (Board Rule 22(b)). To obtain a subpoena, the requesting party must sufficiently "state the reasonable scope and general relevance to the case of the testimony and of any books and records sought" (Board Rule 22(c)(3)). The Board's rules further provide that "the Board may quash or modify a subpoena if it is unreasonable or oppressive or for other good cause shown" (Board Rule 22(d)). The moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable or oppressive. *Truswal Sys. Corp. v. Hydro-Air Eng., Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987).

Although not binding on the Board, we also look to the Federal Rules of Civil Procedure (FED. R. CIV. P.), and decisions addressing those rules, for guidance in discovery disputes. *Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31, 971 at 157,920; *Ingalls Shipbuilding Div. Litton Systems, Inc.*, ASBCA No. 17177, 73-2 BCA ¶ 10,205 at 48,094. Relevant here, the counterpart to Board Rule 22(d), FED. R. CIV. P. 45, provides that a court shall quash or modify a subpoena if it subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv).

When determining if a burden is undue, Federal courts (and thus the Board, which applies the same standard) consider whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). *See also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *Dell Inc. v. DeCosta et al.*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017). In doing so, courts generally balance various factors, including the relevance of the discovery sought, the subpoenaing party's need for the information, the breadth of the discovery request, and the burden imposed on the subpoenaed party. *See e.g., Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *Dell Inc.*, 223 F. Supp. 3d at 3 (citations omitted); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *Zoltek Corp. v. United States*, 104 Fed. Cl. 647, 656 (2012) (quoting *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 190 (2005)); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011). We do the same.

Non-party status is also "a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Parker*, 291 F.R.D. at 188 (citations omitted). *See also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) (holding that "nonparty status may be considered by the court in weighing the burdens imposed in the circumstances") (citation omitted); *Truswal Sys. Corp.*, 813 F.2d at 1210 (concluding that "[i]n assessing the burden of complying with a subpoena, a court may consider as one factor that the deponent is not a party."); *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (stating that

"[w]hile discovery is a valuable right and should not be unnecessarily restricted, . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery") (internal citation omitted). Because of the different expectations for non-parties in accepting the burdens of litigation, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Parker*, 291 F.R.D. at 188. *See also Cusumano*, 162 F.3d at 717 (observing that non-parties "have no dog in [the] fight" and, therefore, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs").

Finally, a subpoena may be quashed or modified if it seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." FED. R. CIV. P. 26(b)(2)(C); *JZ Buckingham Investments LLC v. United States*, 78 Fed. Cl. 15, 18-19 (2007). Motions to quash are within the sound discretion of the trial forum. *See Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008).

II.     F&D'S Motion To Quash Is Granted.

As explained below, we grant F&D's motion for two independent reasons. First, we conclude that the discovery NASA seeks is not likely to lead to the production of information relevant to any party's claim or defense in these appeals. Second, we conclude that the discovery NASA seeks from F&D, a non-party, is duplicative or cumulative of information otherwise available to NASA by direct discovery from appellant.

A.     *The subpoena directed to F&D is overbroad in seeking irrelevant information.*

F&D argues that the information NASA seeks is not relevant to the claims or defenses raised in the instant appeals. In particular, F&D argues that the surety's assessment of the ACM's Miller Act claim is immaterial to appellant's contractual claims pending before the Board in these proceedings. We agree.

Neither Board Rule 22 nor FED. R. CIV. P. 45 expressly lists irrelevance or overbreadth as reasons for quashing a subpoena. Courts, however, have consistently held that "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26" of the Federal Rules of Civil Procedure. *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240-41 (E.D.Va. 2012). *See Cook v. Howard*, No. 11-1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012) (*per curiam*) (concluding that "[a]lthough Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed . . . those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26"). *See also Barrington v. Mortgage*

7

*IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *2 (S.D. Fla. Dec. 10, 2007) (collecting cases); Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (stating that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules"); 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 2459 (2d ed. 1995) (providing that Rule 45 subpoena incorporates the provisions of Rules 26(b) and 34).

FED. R. CIV. P. 26(b)(1) limits the scope of discovery to those materials that are "relevant to any party's claim or defense and proportional to the needs of the case[.]" As such, a subpoena may be quashed as overbroad where it seeks information not relevant to the underlying action. *See Singletary*, 289 F.R.D. at 241 (citing *In Re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D.Va. 2008)). *See also Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990) (holding that a competitor who was not a party to patent owner's infringement suit was entitled to quashing of subpoena seeking matters not relevant to infringement action). While the relevancy requirement in FED. R. CIV. P. 26(b)(1) is to be construed broadly, it is not without bounds. *See Micro Motion, Inc.*, 894 F.2d at 1326-27. Discovery is "designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *Id.* at 1327 (citations omitted). "That the discovery might uncover evidence showing that a [party] has a legitimate claim does not justify the discovery request[.]" *Id.*

Here, we conclude that the subpoena seeks information not relevant to our resolution of these appeals and, consequently, we conclude that the subpoena is overbroad. We, therefore, quash the subpoena as unduly burdensome. *See In Re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612 (holding that "a subpoena imposes an undue burden on a party when [it] is overbroad"). *See also Cook v. Howard*, No. 11-1601, 2012 WL 3634451, at *6 n.7 (concluding that the undue burden grounds of FED. R. CIV. P. 45(c)(3) "encompass[] situations where the subpoena seeks information irrelevant to the case").

On its face, the subpoena seeks information related to ACM's Miller Act claim. In its opposition to the motions, NASA elaborates upon its request, explaining that it wants "to uncover what the surety investigated and how it resolved the subcontractor's claim," as well as "the surety's factual evaluation of the merits of the subcontractor's demand for payment" (gov't opp'n at 4-5, 10). NASA argues that it is entitled to understand F&D's "view" of the Miller Act claim and asserts that it seeks to answer the question: "What did Fidelity think about the claim or claims from ACM?" (*id.* at 10-11). This information, however, is not relevant to the claims or defenses raised in these appeals because the Miller Act dispute is not at issue.

8

Apart from several conclusory assertions that the information sought is "intimately connected to" or "inextricably tied" to the appeals pending before the Board (*id.* at 6-7), NASA provides no explanation whatsoever regarding how F&D's assessment or "view" of ACM's Miller Act claim is relevant to the Board's assessment of appellant's contractual claims, namely appellant's constructive change and waste claim and its differing site conditions claim. Instead, NASA's assertions seem to imply that the Board should find the Miller Act dispute *per se* relevant.

To the contrary, a surety's evaluation of a bond claim under the law of suretyship generally implicates legal and factual matters distinct from the Board's evaluation of contractual claims under the Contract Disputes Act. For instance, as F&D explains, in assessing a bond claim, a surety may consider, *inter alia*, whether a claimant has complied with bond claim filing deadlines, whether the nature of the services furnished are compensable under the Miller Act, and whether any arbitration and/or payment timing clauses contained in the subcontract preclude recovery (F&D mot. at 7-8).[3] NASA does not allege—and we fail to perceive—how F&D's evaluation of these types of issues would be relevant to the contractual matters raised in the proceedings before us. Even assuming for the sake of argument, however, that F&D did consider facts relevant to the matters pending before us, we fail to see how F&D's assessment of those facts in deciding to deny the bond claim would have any bearing on our decision. The Board is fully competent to decide the contractual claims pending before us without receiving opinion testimony from F&D.[4]

Although NASA represents that it is seeking to understand F&D's rationale in denying ACM's Miller Act claim, it is manifestly clear from NASA's opposition brief that what it truly seeks is information to support its earlier assertions of fraud. In this regard, NASA devotes the majority of its brief to its argument that appellant has taken a position in these appeals that is allegedly inconsistent with the position it took in the Miller Act litigation (*see* gov't opp'n at 9-11, 15-16). Specifically, NASA alleges that, in the Miller Act litigation, appellant "maintained a position that its subcontractor was not due any payment due to defective performance" (*id.* at 9). NASA alleges that appellant has reversed course, arguing in these appeals that ACM is entitled to payment on its pass-through claims.

---

[3] In appellant's filings in the Miller Act litigation, appellant highlights another rather pertinent reason that a Miller Act claim might be denied, *i.e.*, that the claimant has not prepared or submitted a contractually mandated certified pass-through claim to the prime contractor (gov't opp'n, ex. 7, Woodruff decl., ¶ 18).

[4] Had NASA made a narrowly tailored request for any documents reflecting *facts* in the possession of F&D that were relevant to the dispute before us, we might have reached a different conclusion. That scenario, however, is not before us and our discussion of NASA's fraud defense below suggests that it is unlikely the types of facts sought by NASA would be relevant.

Despite NASA's preoccupation with appellant's alleged change in position, the Board has already determined that it may resolve these appeals without making factual determinations of fraud. Specifically, in our August 5, 2019 decision, we held, in pertinent part:

> The statements in the claims that the CO found were incorrect were those that purportedly were inconsistent with Mr. Woodruff's declaration that ACM failed to perform in accordance with the specifications. For purposes of this appeal, SPS concedes that it and ACM did not perform in accordance with the specifications. In particular, in its differing site condition appeal, SPS admits performance delays, but—consistent with Mr. Woodruff's declaration—asserts that those delays were due to a differing site condition. Moreover, in its constructive change and waste appeal, SPS concedes that the concrete texture and mooring eyes did not meet the specifications, but asserts that those defects were minor, NASA waived strict compliance with those specifications, and enforcing those specifications would result in economic waste. Because we need not make factual determinations of fraud to resolve those arguments, we possess jurisdiction over these appeals.

*Sand Point Servs., Inc.*, 19-1 BCA at ¶ 181,859-60 (internal citations omitted). In denying appellant's request for summary judgment, the Board further explained:

> [Mr. Woodruff's] admission would not dispose of the constructive change and waste appeal. That is because on appeal, SPS's argument is that, even if it was ACM's fault that the concrete texture and mooring eyes did not meet the specifications, NASA waived strict compliance with those specifications, and strict enforcement of those specifications would result in economic waste. Therefore, not only does Mr. Woodruff's declaration fail to establish a lack of genuine dispute as to whether the concrete texture and mooring eyes defects were ACM's fault, that issue is not material to this appeal.

*Id.* at ¶ 181,860 (internal citations omitted).

Moreover, as explained above, the Board reiterated these conclusions in its August 28, 2019 discovery order. (Order at 2) (finding the Miller Act dispute irrelevant

10

to the appeals because "even if SPS's dispute with its subcontractor established that it was the subcontractor's fault that performance did not meet the specifications, that fact would not preclude SPS's claim"). Hence, on two previous occasions, the Board has determined that any information pertaining to the Miller Act dispute is immaterial to the issues presented in these appeals.[5]

In sum, although the Board reads "relevance" broadly, we do not endorse fishing expeditions, discovery abuse, and inordinate expense involved in overbroad and far-ranging discovery requests. Instead, the Board tailors discovery to the issues involved in the particular appeal. Here, the Board concludes that NASA's subpoena request for discovery relating to the Miller Act dispute is not facially relevant to these appeals, and NASA has failed, in its brief, to convince the Board that the information is relevant. Even if the Board concedes that the information may be marginally relevant, the burden and expense placed on F&D, a non-party to these appeals, outweighs the relevance and value of the information.

> B. *The subpoena directed to F&D is duplicative or cumulative of information otherwise available to NASA by direct discovery.*

F&D presents an additional basis for its motion to quash, arguing that the discovery NASA seeks is available to NASA from other sources, namely from the appellant, a party to these proceedings. F&D characterizes its role in the project as a mere "bystander," reliant upon others, such as appellant, to provide it with information to evaluate the bond claim and to defend against the Miller Act suit (F&D mot. at 5, 10). F&D contends, therefore, that the subpoena directed to it seeks information that has been (or could have been) requested of and produced by appellant (*id.* at 5-6). F&D further contends that NASA's failure to pursue fully such information from appellant through direct discovery and, if necessary, to renew its motion to compel such information, does not entitle NASA to seek the information through the more intrusive and burdensome means of a non-party subpoena (F&D reply br. at 2).

NASA concedes that the information it seeks from F&D was requested from appellant during discovery. *See e.g.*, gov't opp'n at 10 (contending that "[a]ppellant refused to provide this information in written discovery"). *See also id.* at 8 (clarifying that "[i]t is this information, not provided by Appellant during discovery, that Respondent seeks through relevant deposition testimony from the person most knowledgeable/person most qualified to provide such information on behalf of the surety"); *id.* at 9 (asserting that "[a]ppellant has not provided that information in discovery."); *id.* at 7 (explaining

_____

[5] Although NASA claims that it has uncovered, through discovery, more evidence that appellant viewed ACM's work to be non-compliant with the terms of the contract (*see* gov't opp'n at 14-16), NASA fails to explain how such a view is relevant to a claim or defense in these appeals.

11

that one of the purposes of the subpoena is to determine what, if any, supporting information ACM provided to F&D). Despite admitting the duplicative nature of the subpoena request, NASA asserts that discovery from F&D is nevertheless permissible because the government's attempts to obtain discovery from appellant have been unsuccessful (*see id.* at 9-10).[6] We disagree.

A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative. *See* FED. R. CIV. P. 26(b)(2)(C); *Parker*, 291 F.R.D. at 188 (quashing plaintiff's subpoena served on a non-party because either the documents sought were duplicative of discovery requests directed to defendant or the requests were invalid as overly broad, burdensome, irrelevant or previously could have been the subject of discovery). *See also Haworth v. Herman Miller*, 998 F.2d 975, 978 (Fed. Cir. 1993) (holding that a court may properly require parties to seek discovery first from other parties before burdening non-parties); *American Standard Inc. v. Pfizer Inc. et al.*, 828 F.2d 734, 743 (Fed. Cir. 1987) (noting that the need for discovery "is diminished when the information is available elsewhere").

NASA's argument that appellant allegedly failed to comply with NASA's discovery requests does not change the situation. A party does not demonstrate a compelling need to make duplicative or cumulative non-party requests simply because its opponent in the underlying action fails to comply with document requests for the same information. NASA's failure to show proper efforts to compel subcontractor payment dispute discovery from appellant, or the lack of success in any prior attempts, does not permit NASA to unduly burden F&D with responding to the subpoena.

As such, the record before the Board demonstrates that NASA has not exercised reasonable diligence in pursuing the desired information from appellant, the least intrusive means of obtaining the information in the underlying appeal. *See* FED. R. CIV. P. 26(b)(2)(C)(i) (permitting limitation of discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Accordingly, the Board quashes the non-party subpoena directed to F&D as duplicative or cumulative because it seeks information that is readily available from a party through discovery.

In short, based on the two independent grounds discussed above, we find that F&D has satisfied its burden in moving to quash the subpoena. Thus, the Board quashes in its entirety the subpoena issued to F&D. Having granted F&D's motion on the grounds detailed above, we need not consider F&D's final argument, *i.e.*, that the

---

[6] NASA does not assert, nor does it provide any evidence to support an assertion, that the information it seeks is not within the possession, custody, or control of appellant, only that appellant has refused to produce the information in discovery (*see generally* gov't opp'n at 9-10).

information sought is protected by the work product doctrine and the attorney-client privilege, and that, under the common interest doctrine, F&D did not waive such protections by disclosing the information to appellant during the pendency of the Miller Act claim and litigation.

   C.  *NASA's request to dismiss F&D's motion is unavailing.*

   NASA raises one final—and rather convoluted—challenge to F&D's motion. NASA argues that the Board must dismiss F&D's motion because the motion incorporates by reference the statement of facts set forth in appellant's motion (gov't opp'n at 3).[7] NASA's dismissal argument proceeds as follows: First, the Board should dismiss appellant's motion (for reasons detailed in Section III below) and strike any references in F&D's motion to the facts detailed in appellant's motion. Next, having struck such references, the Board is compelled to dismiss F&D's motion because the facts are central to the Board's resolution of the motion. Without such facts, F&D's motion fails and should be dismissed.

   We find NASA's argument entirely without merit. Even if the Board were to dismiss appellant's motion, NASA cites no legal authority for striking any portion of appellant's or F&D's motions, let alone dismissing F&D's motion. More importantly, in this context, striking a recitation of relevant facts from a party's brief does not render such facts non-existent or prevent the Board from considering such facts. As F&D aptly notes in its reply brief, NASA appears to "treat[] the basic facts incorporated by reference into F&D's brief as if they were criminal evidence that must be suppressed due to an unconstitutional search and seizure" (F&D reply br. at 2). We agree and find NASA's *quasi* "fruit of the poisonous tree" argument unavailing and unsupported.

III. <u>Appellant's Motion To Quash The Subpoena Directed To F&D Is Denied;<br>Its Motion To Quash The Subpoena Directed To Mr. Bresel Is Dismissed.</u>

   A.  *Appellant possesses standing to challenge the non-party subpoenas.*

   Before considering the merits of appellant's motion, we first must determine whether appellant possesses standing to challenge the non-party subpoenas issued to F&D and Mr. Bresel. In its opposition, NASA argues that the Board should "strike" appellant's challenge to the subpoena directed to F&D because appellant does not represent F&D (gov't opp'n at 13). Although NASA does not style its argument as a request that the Board dismiss appellant's challenge for lack of standing, we construe it

---

[7] Specifically, in the background section of its motion, F&D states that "[t]o the extent the Board's resolution of this motion requires consideration of the factual and procedural background of these appeals, F&D incorporates the statement of facts set forth in SPS's motion" (F&D mot. at 2).

13

as such. Moreover, we note that the same argument would apply to Mr. Bresel, as an employee of a non-party.

Generally, a party lacks standing to challenge a subpoena issued to a non-party unless the party claims some personal right or privilege in the information sought by the subpoena. *Singletary*, 289 F.R.D. at 239 (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)). *See also Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 22 (D.C. Cir. 2005) (holding that "absent a privilege, personal interest, or proprietary interest, [a party] has no standing to seek to quash, under Federal Rule of Civil Procedure ('Rule') 45, a subpoena issued to a non-party."); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (noting that "it appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.'") (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)).

Here, appellant alleges that NASA seeks information protected by the attorney-client privilege and the work product doctrine, and that, under the common interest doctrine, appellant did not waive such protections by disclosing the information to F&D or Mr. Bresel during the pendency of the Miller Act claim and litigation. Accordingly, the Board finds that appellant has standing to challenge the subpoenas directed to F&D and Mr. Bresel.[8] *See e.g., Stevenson*, 201 F.R.D. at 555 n.3 (finding plaintiff had standing to attempt to quash subpoena where plaintiff alleged the material sought was confidential and protected by privilege).

B.      *Appellant's motion to quash the subpoena directed to F&D is denied as moot.*

Although we conclude that appellant possesses standing to challenge the subpoena directed to F&D, we nevertheless deny this aspect of appellant's motion as moot. Having granted F&D's own motion to quash the subpoena, we see no reason to consider the alternative reasons relating to privilege raised by appellant.

---

[8] Although we conclude that appellant possesses standing to challenge the subpoenas on the basis that the information sought may be protected, we suspect appellant's challenge to be overbroad. Contrary to appellant's claims (*see generally* app. mot. at 5-6), it is unlikely that *all* documents and information sought by NASA are subject to the asserted privileges and protections. Whether appellant's challenge is overbroad and to what extent, however, are questions to be resolved on the merits.

14

C.	*Appellant's motion to quash the subpoena directed to Mr. Bresel is dismissed for prudential reasons.*

Finally, NASA asserts that appellant's motion to quash the subpoena directed to Mr. Bresel is not ripe for adjudication because the subpoena has not been served (gov't opp'n at 3, 13).  NASA argues that the Board, therefore, must dismiss appellant's motion for lack of jurisdiction (*id.* at 3).  NASA, however, offers no support for its jurisdictional argument, purportedly expecting Board to accept its *ipse dixit* regarding our authority.  We decline to do so.

Before turning to NASA's jurisdictional argument, we note that fact discovery closed in these appeals on December 17, 2020.  To our knowledge, NASA did not serve Mr. Bresel with the subpoena prior to this deadline.  Accordingly, it is probable that the Board could dismiss as moot appellant's motion to quash the subpoena directed to Mr. Bresel.  That said, having received no briefing from the parties regarding the impact of the close of discovery on this aspect of appellant's motion and not wishing to delay further the resolution of the pending discovery dispute, we proceed to address the argument raised by NASA.

Our rules provide that a party's request to quash or modify a subpoena should be "made within 10 days after service but in any event not later than the time specified in the subpoena for compliance" (Board Rule 22(d)).  The intent of these parameters is to ensure that parties submit requests in a timely manner to the Board.  Our rules, however, do not preclude our review of requests submitted outside these parameters.  Consequently, although there may be prudential grounds favoring dismissal of requests submitted outside the parameters established in Rule 22(d), the Board, in its discretion, may consider such requests.

At this time, the Board declines to consider appellant's challenge to the subpoena directed to Mr. Bresel, which would necessitate an analysis of the scope of several asserted privileges.  Rather, we find such an analysis premature.  The subpoena directed to Mr. Bresel seeks the same information sought through the subpoena directed to F&D and, therefore, it should be evident to the parties that the subpoena directed to Mr. Bresel likely suffers from the same problems we describe in Section II above.  As a result, NASA should reexamine the subpoena directed to Mr. Bresel in light of this decision.  At this time, we dismiss without prejudice appellant's challenge to the subpoena directed to Mr. Bresel.

CONCLUSION

For the foregoing reasons, F&D's motion to quash the subpoena directed to it is **GRANTED**. Appellant's motion to quash the subpoena directed to F&D is **DENIED** as moot and its motion to quash the subpoena directed to Mr. Bresel is **DISMISSED**.

Dated: January 13, 2021

ELIZABETH WITWER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61819, 61820, Appeals of Sand Point Services, LLC, rendered in conformance with the Board's Charter.

Dated: January 13, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals